# United States Court of Federal Claims

No. 16-389 C
Filed: August 18, 2017

|  |  |  |
|---|---|---|
| MATTHEW T. CRUMLEY, | ) | |
|  | ) | |
| Plaintiff, | ) | RCFC 12(b)(1); Lack of Subject-Matter |
|  | ) | Jurisdiction |
| v. | ) | RCFC 52.1; Judgment on the |
|  | ) | Administrative Record |
| THE UNITED STATES, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

*Matthew L. Eanet*, Eanet, PC, Los Angeles, CA, for plaintiff.

*Michael D. Snyder*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

     This action is before the Court on defendant's Motion to Dismiss, and on the parties' Cross-Motions for Judgment on the Administrative Record. On March 28, 2016, plaintiff, Matthew Crumley, filed a complaint asserting that he was wrongfully separated from the United States Air Force ("USAF") and seeks various forms of relief, including an order vacating his discharge from the USAF and the resulting back pay. On March 17, 2017, defendant ("government") filed a motion to dismiss plaintiff's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC"), or, in the alternative, for judgment on the administrative record. On April 21, 2017, plaintiff filed a cross-motion for judgment on the administrative record. The Court held Oral Argument on the matter on July 27, 2017.

     For the following reasons, the Court grants defendant's Motion for Judgment on the Administrative Record, and denies plaintiff's Cross-Motion for Judgment on the Administrative Record.

I.     **Background**

Matthew Crumley served in the USAF from May 26, 2000 until his honorable discharge at the rank of Major in March of 2012. Complaint (hereinafter "Compl.") at 1. On November 20, 2010, Crumley was injured after stepping onto astro-turf that covered an open grave site while serving as an Honor Guard Ceremonial Guardsman at a funeral ceremony. Motion to Dismiss or Alternatively, for Judgment Upon the Administrative Record (hereinafter "MTD") at 4. On November 22, 2010, Crumley emailed senior USAF officials informing them of the incident and his injuries, as well as stating his intention to bring legal action for his injuries and his expectation of USAF support. *Id.*

On December 21, 2010, Crumley received a Letter of Admonishment ("LOA") from Colonel Keith Boyer for allegedly disrespectful and uncooperative behavior. Compl. at 7; *see also* MTD at 4 (citing Administrative Record (hereinafter "AR__") at 96, 351). The alleged behavior included shouting at personnel at Hanscom Air Force Base's ("AFB") legal office and raising his voice to the base's staff judge advocate. MTD at 4. According to the defendant, "Mr[.] Crumley was so loud that his shouting could be heard by the Hanscom Air Force Base Commander from a different section of the headquarters building." *Id.* at 4-5.

Crumley first responded to the LOA on January 6, 2011. *Id.* at 5. The LOA and Crumley's response became the basis for an Unfavorable Information File ("UIF") filed by Major General Walter Givhan on January 26, 2011. *Id.* Crumley provided an additional response to the LOA and UIF on February 10, 2011. *Id.* Major General Givhan "establish[ed] the UIF and included the LOA in it" on March 10, 2011. *Id.* at 6. In August of 2011, Colonel Boyer wrote a referral Education/Training report ("2011 Report") which incorporated the UIF and stated that "Crumley displayed disrespectful and unprofessional behavior . . . for which he received a[n LOA]." Compl. at 9; *see also* MTD at 6. Crumley responded to the 2011 Report, asserting that any perceived unprofessional conduct was a misunderstanding. MTD at 6.

In 2011, the USAF conducted a reduction-in-force ("RIF"), pursuant to 10 U.S.C. § 638(a), which sought "to separate up to 30 percent of those subject to the review," including Major Crumley. *Id.* (citing AR 349). The RIF board "non-selected" Crumley for retention and notified Crumley of its decision in a letter dated October 27, 2011. AR 134. Crumley's official Certificate of Release states that the reason for his separation was "Reduction in Force." *Id.* at 136. Crumley was released from service with an Honorable Discharge on March 1, 2012. MTD at 7.

On January 3, 2012, Crumley "initiated an Inspector General ("IG") complaint raising an allegation of reprisal for being a whistleblower pursuant to the [Military Whistleblower Protection Act]." *Id.* Crumley claimed that he had been separated for reporting the reason for his injury to senior USAF staff. *Id.* On January 25, 2012, the IG concluded that Crumley did not

present circumstances which afforded Crumley whistleblower status under that Act, and that Crumley's complaint warranted no further action and should be closed. MTD at 7-8.

Crumley later appealed his discharge to the Air Force Board for Correction of Military Records ("AFBCMR"), which denied the appeal on January 28, 2014. Compl. at 9. Crumley then appealed to the Undersecretary of Defense, and that appeal was denied on August 6, 2014. *Id.* Crumley requested a special board pursuant to 10 U.S.C. § 1558, and the board issued a decision denying Crumley's requested relief on December 16, 2016. AR 6-7. The AFBCMR special board found that Crumley had not provided sufficient evidence to show that he was the victim of some error or injustice, that the LOA, UIF, and 2011 Report should remain in Crumley's record, and that the RIF board's decision should not be overturned. *Id.*

Crumley alleges that the government violated various USAF procedures when the government and its agents issued the LOA, the UIF, and the 2011 Report. Reply in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record (hereinafter "P's Reply") at 4-9. Crumley further argues that these documents formed the basis for his discharge, and thus the RIF board's decision, and the AFBCMR's subsequent decisions, are arbitrary and capricious. *Id.*

The government filed a motion to dismiss Crumley's claim pursuant to RCFC 12(b)(1). MTD at 1. The government extensively argues that this Court lacks jurisdiction over claims under the Declaratory Judgment Act, the Administrative Procedure Act ("APA"), the Military Whistleblower Protection Act ("MWPA"), and the federal mandamus statute, all of which are cited in plaintiff's Complaint. Further, the government maintains that Crumley's claim relates to nonjusticiable military personnel decisions. *Id.* at 20. The government asserts that this Court cannot review discretionary military personnel matters. *Id.* at 28 (quoting *Walters v. United States*, 37 Fed. Cl. 215, 220 (1997)).

The government characterizes Crumley's claim as a dispute over the merits of each decision leading to his discharge, rather than a dispute over its procedure. *Id.* at 30. These decisions, according to the government, fall within the military's discretion, and are therefore nonjusticiable. *Id.* In the government's view, "[t]he only procedural deficiency claimed in this entire set of facts is that [Colonel] Boyer failed to get Mr. Crumley's signature on the LOA indicating Mr. Crumley's acknowledgement of the right to provide statements before a final decision was made." *Id.* This, says the government, is "an entirely harmless error" because Crumley had notice of the LOA, as evidenced by his response to it. *Id.* (citing AR 98-99).

In the alternative, the government's Motion requests that this Court grant judgment on the administrative record, arguing that Crumley is unable to meet his burden of proof on that record. MTD at 31-32. The government asserts that substantial evidence supports the AFBCMR's decision, pointing out that Crumley's yelling at Hanscom AFB was loud enough to be heard in a different part of the building. *Id.* at 32 (citing AR 96, 351). In addition, the government claims

that, "[w]hile he attempted to recant his admission later, Mr. Crumley admitted that he was disrespectful . . . ." *Id.* (citing AR 93).  The government further argues that Crumley has not provided substantial evidence to demonstrate that the LOA, UIF, and 2011 Report did not follow Air Force protocol and that Crumley cannot establish that these documents were the proximate cause of his discharge.  *Id*. at 34.

Crumley asserts that there are multiple justiciable procedural defects related to the LOA, UIF, and 2011 Report.  P's Reply at 4-9.  Crumley claims that the adverse actions against him were conducted in bad faith and were fueled by improper motives.  *Id.* at 4.  Further, Crumley alleges that his superiors failed to comply with military regulations and statutes related to the LOA, UIF, and 2011 Report.  *Id.* at 5-9.  According to Crumley, these procedural defects render the LOA, UIF, and 2011 Report "unsubstantiated, unwarranted, and not completed in accordance with applicable regulations," and, in turn, these defects render his separation under the RIF, as well as the AFBCMR's decision, "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law."  *Id.* at 1, 11.

## II.     Standard of Review

### A.     Rule 12(b)(1) – Motion to Dismiss for Lack of Subject-Matter Jurisdiction

This Court's jurisdictional grant is primarily defined by the Tucker Act, which provides this Court the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases *not* sounding in tort."  28 U.S.C. § 1491(a)(1) (2012) (emphasis added).  Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

When the Court's subject-matter jurisdiction to hear a case is challenged, the plaintiff has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

B.      **Rule 52.1(c) – Judgment on the Administrative Record**

The Court reviews decisions of military correction boards based upon the Administrative Record. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). When a party requests judgment on the Administrative Record under RCFC 52.1, the Court makes findings of fact as if it were conducting a trial on a paper record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id.* at 1355.

There is a deferential standard when reviewing military personnel decisions, and this Court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States,* 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States,* 333 F.3d 1354, 1355 (Fed. Cir. 2003)). Further, the Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach different conclusions on the same evidence." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983). Finally, the plaintiff must overcome the presumption of regularity which attaches to actions of the military and military records correction boards. *Armstrong v. United States,* 205 Ct. Cl. 754, 762–63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary) (citations omitted).

III.    **Discussion**

Crumley's prayer for relief is structured in such a way that it appears that he is, first and foremost, requesting declaratory relief. The Complaint specifically cites the Declaratory Judgment Act, the APA, the Tucker Act, the Military Pay Act, the MWPA, and the federal mandamus statute. Compl. at 1-2. However, the substantive crux of Crumley's Complaint is a military pay claim resulting from Crumley's allegedly wrongful discharge and the subsequent AFBCMR special board decision. It is well established that the Military Pay Act, 37 U.S.C. § 204, is a separate, money-mandating source of law that provides the Court with jurisdiction. *See, e.g.*, *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The other requested relief is merely ancillary to Crumley's money damages claim, typical of a military pay claim.

Under the Tucker Act, the Court has the ability to award equitable relief in the form of declaratory judgment and "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," when such an order would "provide an entire remedy and . . . complete the relief afforded by the judgment [on a claim for monetary damages under the Act]." 28 U.S.C. § 1491(a)(2); *see also Mercier v. United States,* 114 Fed. Cl. 795, 800 (2014) (discussing the requirement under the Tucker Act for declaratory judgments to be attendant to an award of a money damages), *rev'd in part on other*

- 5 -

*grounds,* 786 F.3d 971 (Fed. Cir. 2015).  As plaintiff's claim falls under the purview of the Military Pay Act, and, as such, is based upon a money mandating statute, the Court has jurisdiction to entertain Crumley's claim for back pay and review of the AFBCMR special board's final decision.  *See Martinez*, 333 F.3d at 1303 (citations omitted); *see also Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) ("If an officer elects to pursue a remedy before the Corrections Board, after the Board renders a final decision, the officer may effectively obtain review of that decision in the Court of Federal Claims by filing suit under the Tucker Act.") (citation omitted).

In addition to arguing that this Court lacks jurisdiction over plaintiff's claim, the government disputes the justiciability of those claims.  The Federal Circuit has held that "[t]he merits of a military staffing decision are committed 'wholly to the discretion of the military.'" *Allphin v. United States*, 758 F.3d 1336, 1341 (Fed. Cir. 2014) (citing *Adkins v. United States*, 68 F.3d 1317, 1322-23 (Fed. Cir. 1995)).  "[D]etermining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig*, 719 F.2d at 1156.  However, "[u]nlike merit-based challenges, procedural challenges to military decisions may be justiciable, particularly if statutes or regulations govern the decision." *Allphin*, 758 F.3d at 1342 (citing *Adkins*, 68 F.3d at 1323).

In this instance, there is no dispute over the merits of any of the adverse documentation against Crumley.  Crumley even admitted to the behavior which ultimately formed the basis of that documentation.  AR 93.  Crumley instead challenges the AFBCMR special board's decision on the grounds that the LOA, UIF, and 2011 Report should have never been considered by the RIF board because they suffer from various procedural defects.  P's Reply at 5-9.

The procedural defects which Crumley has alleged are immaterial to the AFBCMR special board's decision.  Crumley posits that the LOA failed to comply with AFI 36-2907 because it does not provide specifics such as when, where, or how the plaintiff was disrespectful to a superior officer.  P's Reply at 5.  AFI 36-2907 provides that when administering an LOA, the letter, if written, states "[w]hat the member did or failed to do, citing specific incidents and their dates." AFI 36-2907, para. 4.5.1.1.  The LOA in question includes plenty of context and enough details for any reader to understand the nature and timing of these incidents.  AR 96-97.  The letter describes Major Crumley's original e-mail to superiors, interactions with AFB legal office personnel, a phone conversation between Major Crumley and Colonel Boyer, and the initial date—November 22, 2010—on which the concerning actions began.  *Id*.

In addition to these substantive defects, plaintiff claims that because "(1) the LOA did not contain the required endorsement for signature by Major Crumley; and (2) the Commander did not acknowledge receipt of applicant's rebuttal prior to deciding to establish a UIF" it was an error for the AFBCMR to fail to correct Major Crumley's records.  P's Reply at 6-7; *see also* AR 13.  While it is true the LOA suffers from the missing signatures, plaintiff responded to the LOA on two occasions, January 6, 2011 and February 10, 2011.  AR 97-100.  After receiving plaintiff's initial response on January 6, 2011, Colonel Boyer went so far as to visit Major

Crumley to further discuss the LOA and provided him the second opportunity to respond.  *Id*. Included in Major Crumley's second response is an admission and understanding of the situation, "I take full responsibility and ownership regarding my conduct/tone in meeting in the Judge Advocate's Office on 22 Nov 10."  AR 100.  Therefore, it cannot be said that these minor procedural deficiencies are in any way material defects that warrant removing these files from plaintiff's records.

Major Crumley had notice, multiple chances to respond, a clear understanding of the contents of the LOA, UIF, and 2011 Report, and suffered no substantial deprivation of rights as a result.  Accordingly, plaintiff has failed to show that the AFBCMR special board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  The RIF board properly considered the LOA, UIF, and 2011 Report and was well within its discretion to non-select Major Crumley for retention.

### IV.    Conclusion

For the reasons set forth above, defendant's MOTION for Judgment on the Administrative Record is **GRANTED**.  Plaintiff's CROSS-MOTION for Judgment on the Administrative Record is **DENIED**.  The Clerk is directed to enter judgment in favor of defendant, consistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge